UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

New Par d/b/a Verizon Wireless,
a Delaware Partnership,

      Plaintiff,

v.                            Case No. 19-10228

Charter Township of Brighton, a       Sean F. Cox
Michigan Charter Township.          United States District Court Judge
_____/

**OPINION & ORDER**

      In this consolidated case, the plaintiff telecommunications service provider challenges

the defendant township's denial of its applications to build two cellular telephone towers as

violative of the federal Telecommunications Act. Plaintiff seeks an injunction requiring the

defendant township to grant the applications and issue the necessary permits. Any trial in this

action would be a bench trial. The matter is before the Court on cross-motions for summary

judgment. The parties briefed the issues and the Court heard oral argument on February 27,

2020. As explained below, the Court shall GRANT summary judgment in favor of the plaintiff

service provider as to Count I of its Complaints, because the township's reasons for denying the

applications (aesthetic concerns and negative impact on property values) were not supported by

substantial evidence in the written record before the township, and issue an order requiring the

township to grant the two applications and issue the necessary permits.

**BACKGROUND**

On January 23, 2019, Plaintiff New Par d/b/a Verizon Wireless ("Verizon") initiated this civil action against Defendant Charter Township of Brighton ("the Township") by virtue of filing a "Complaint for Permanent Injunction." That Complaint includes the following four counts: 1) "Violation of the Federal Telecommunications Act of 1996: Failure to Support Denial with Substantial Evidence" (Count I); 2) "Violation of Federal Telecommunications Act of 1996: Prohibition of Personal Wireless Service" (Count II); 3) "Violation of Federal Telecommunications Act of 1996: Failure to Provide a Writing of its Decision" (Count III); and 4) "Violation of State Law: Special Land Use Standards" (Count IV).

This case was filed based on federal-question jurisdiction over Counts I, II, and III. Verizon asks this Court to exercise supplemental jurisdiction over Count IV, a state-law claim. There was no jury demand filed and, therefore, any trial in this action would be a bench trial.

On May 29, 2019, the parties stipulated to having another dispute between the parties over a second permit application, Case Number 19-10230, consolidated with this case. (*See* ECF No. 10). Verizon's Complaint in that case asserted the same four counts that were asserted in the Complaint filed in this case, just as to the second application. Thus, this case now involves the denial of two special land use applications for two proposed wireless antenna sites (cell towers) in the Township.

Following the close of discovery, both parties filed summary judgment motions. In its summary judgment motion, Verizon seeks summary judgment in its favor as to Count I and II of its Complaints and seeks an injunction directing the Township to grant its applications for the two cell towers. As counsel for Verizon stated at the hearing, if Verizon prevails as to Count I of its Complaints, it would obtain the requested injunction regardless of the disposition of the

additional or alternative counts in its Complaints.  In its summary judgment motion, the Township seeks summary judgment in its favor and asks the Court to deny the requested injunctive relief.

## STANDARD OF REVIEW

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is "material" for the purposes of summary judgment if proof of that fact would have the effect or establishing or refuting an essential element of the cause of action or a defense advanced by the parties.  *Kendall v. Hoover, Co.* 751 F.2d 171, 174 (6th Cir. 1984).  A dispute over a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

Here, the Court is presented with cross-motions for summary judgment.  That both parties in this case have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts.  *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (citations omitted).

## RELEVANT FACTS

This Court's practice guidelines are included in the Scheduling Order and provide, consistent with Fed. R. Civ. P. 56 (c) and (e), that:

    a.  The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute.  The statement shall list in separately

numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .

b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts. The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.

c. All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(Scheduling Order at 2-3).

The parties complied with the Court's practice guidelines for motions for summary judgment such that Verizon's motion includes a "Statement of Material Facts Not In Dispute" ("Verizon's "Stmt. A") and the Township's response brief includes a "Counter-Statement of Disputed Facts" ("Twp.'s Stmt. A"). In addition, along with the Township's motion it submitted a "Statement of Material Facts Not In Dispute" ("Twp.'s Stmt. B") and in response, Verizon submitted a "Counter-Statement Of Disputed Facts" ("Verizon's Stmt. B").

The relevant evidence submitted by the parties is set forth below. Unless stated otherwise, these facts are undisputed.

**The Zoning Ordinance**

Brighton Township has a Zoning Ordinance (the "Zoning Ordinance"). The section of the Zoning Ordinance that pertains to "Wireless Communication Facilities" (Section 13-16) states that, "It is the Township's intent to reasonably regulate the location and design of these facilities to retain the integrity of neighborhoods and the character, property values, and aesthetic quality of the Township." (Stmts. B at ¶ 7). It further states that cell towers "shall be located

4

and designed to be harmonious with the surrounding areas." (Stmts. B at ¶ 8).

The Zoning Ordinance allows for new monopoles of up to 120 feet to be constructed in all non-residential districts, and allows for the construction of monopoles "of any height" in industrial-zoned districts. (ECF No. 21-11). The Zoning Ordinance provides that construction of a new cell tower site, such as the cell tower sites desired by Verizon, require a "Special Land Use and Site Plan approval" in accordance with Articles 18 & 19.

As to its standards for approval of special land use proposals, the Zoning Ordinance states that "[i]n determining whether a special land use will be compatible and not create a significant detrimental impact, *as compared to the impacts of permitted uses*, consideration shall be given to the degree of impact the special land use may have on adjacent property, as compared with the expected benefit to the community." (Zoning Ordinance, Section 19-03(a)) (emphasis added). It further states that Special Land Uses "shall complement and enhance the surrounding environment, and shall not unreasonably interfere with nor discourage . . . use of adjacent land and buildings nor unreasonably affect their value." (Stmts. B at ¶ 9).

Significantly, it is undisputed that the land at issue in this case, where Verizon seeks to construct its cell tower sites, is zoned "I-1" which is *industrial*. (Stmts. A at ¶¶ 15 & 16). The Zoning Ordinance provides that such industrial-zoned property may be used for a variety of specified purposes as of right (ie., without obtaining a special land use permit) including: 1) "Telephone Exchange Buildings;" 2) "Electrical Transformer Stations & Substations;" 3) "Water Supply & Sewage Disposal Plants;" 4) "Water and Gas Tank Holders;" 5) "Radio and Television Broadcasting Stations;" 6) a variety of manufacturing facilities; and 7) ""Research, Design & Pilot or Experimental Product Development & Testing, Including Vehicle Testing & Proving

Grounds."  (Zoning Ordinance, ECF No. 21-11, at Section 7-02).

The General Motors ("GM") Proving Grounds consists of 2000 acres and accounts for about 10% of the Township's acreage.  (Stmts. B at ¶ 2).

Verizon has one existing cell tower within the GM Proving Grounds.  This tower was previously located on a water tower within the Milford Township section of the Proving Grounds, but is being replaced by as new monopole located adjacent to the old water tower site.  (Stmts. A at ¶ 5).

A few years ago, Verizon concluded that it had a coverage gap in the area around the GM Proving Grounds.

Verizon sought permission to construct a cell tower at 1360 N. Hickory Ridge in Milford Township Michigan on a parcel owned by a church that was located in a residentially-zoned area.  (Stmts. A at ¶ 2).  Verizon abandoned that effort after resistence from the Milford Township Planning commission.  (*Id*.).

Verizon investigated the possibility of collocating on a wireless facility west of the GM Proving Grounds on a parcel of property where Brighton Township has a fire station.  (Stmts. A at ¶ 3).  But it was determined that Brighton Township's fire station site was too far away to allow Verizon to accomplish what needed to be done.  (Stmts. A at ¶ 4).

Prior to seeking to place a wireless facility on the GM Proving Grounds, Verizon also sought to collocate on a microwave tower site south of the GM Proving Grounds but it was not satisfactory.  (Stmts. A at ¶ 5).

Verizon evaluated a site on the northwest corner of Commerce and Hickory Ridge Road but the parcel did not meet the setback requirements.  (Stmts. A at ¶ 6).  Verizon also considered

looking at sites north of Commerce Road, but they were zoned residential.  (Stmts. A at ¶ 7).

Verizon then sought to construct two cell tower sites on the GM Proving Grounds on land in the Township.

According to Verizon's representative, Robert Przybylo, Verizon provided GM with "the general areas of where [Verizon believed the Proposed Sites] needed to be" and that GM provided one spot for each of the proposed cell towers.  (Stmts. B at ¶ 10; *see also* Stmts. A at ¶ 13, admitting "that GM provided Verizon with its preferred locations for the towers.").

**The Applications And Proposed Sites**

In March of 2018, Verizon submitted two applications for Special Land Use Permits to the Brighton Township Planning Commission for two proposed cell towers located at the edge of the GM Proving Grounds.  (Stmts. B at ¶ 1).  The two proposed sites are located: 1) off of Commerce Road at the northern edge of the Proving Grounds (the "Commerce Road Site"); and 2) at the western edge of the Proving Grounds near the intersection of Pleasant Valley and Hyne Roads (the "Pleasant Valley Site") (collectively, the Proposed Sites").  (Stmts. B at ¶ 3).

The Commerce Road Site is the parcel of property on which Verizon seeks a special land use on the GM Proving Grounds under special use application 18/01.  (Stmts A at ¶ 15; ECF No. 22-6).  This land is "zoned I-1 which is industrial."  (Stmts A at ¶ 15).  The special land permit 18/01 seeks to place a 195 foot high monopole on the GM Proving Grounds near Commerce Road.  (Stmts A at ¶ 17).  The 195 foot monopole proposed at the Commerce Road Site met the setback requirements set forth in the Brighton Township Zoning Ordinance.  (Stmts A at ¶ 19)

The Pleasant Valley Site is the parcel of property on which Verizon seeks a special land

use on the GM Proving Grounds under special use application 18/02.  (Stmts. A at ¶ 16).  This land is also "zoned I-1 which is industrial."  (*Id.*).  The special land use permit 18/02 seeks to place a 195 foot high monopole on the GM Proving Grounds near Pleasant Valley Road.  (Stmts. A at ¶ 18).  The 195 foot monopole proposed at the Pleasant Valley Site met the setback requirements set forth in the Brighton Township Zoning Ordinance.  (Stmts A at ¶ 20).

After Verizon submitted its applications, Township Planner Kelly Matthews prepared an analysis for each of the two Proposed Sites.  Those analyses are dated October 9, 2018.  Those reports reflect that the Proposed Sites met all of the setback and other objective requirements set forth in the Zoning Ordinance that apply to wireless communication facilities.  The Township Planner recommended that the Planning Commission approve both of Verizon's special land use applications.  (*See* ECF Nos. 21-6 & 21-7).

**Opposition To The Towers**

The Planning Commission then held three public meetings related to the Proposed Sites, on June 13, 2018, November 13, 2018, and December 10, 2018.  (Stmts. B at ¶ 11).

According to the United States Census Bureau, the Township had a population of more than 17,000 in 2010 and an estimated population of more than 18,000 in 2018.

There was some opposition to the Proposed Sites, both in the form of testimony at Planning Commission Public Meetings and letters, emails and information submitted in advance of those meetings.  (*See* Def.'s Exhibits F, J, K & S).

The Township asserts that a total of "approximately 25 individual citizens lodged concerns" regarding the two separate Proposed Sites.  (ECF No. 24 at PageID.958).  That is the total number of Township residents that opposed the two proposed towers on *any ground*, and

8

that number includes individuals that are married couples who reside in the same household.

Most individuals that opposed the towers expressed concern about the aesthetics of the Proposed Sites and maintaining the integrity of the rural-residential area. (Stmts. B at ¶ 13).

For example, at the November 13, 2018 public meeting, one Township resident objected to the proposed tower at the Commerce Road Site based upon "aesthetics," asserting that "a cell tower does not fit in with the neighboring residential area" and expressing that it should be moved farther back into the GM Proving Grounds "[t]hen we won't see it." (11/13/18 Mtg. Tr. at 10-11). Another resident expressed that "nobody wants a cell phone tower in their front yard," and stated that "for the aesthetics reasons it would be much better to move the tower into the center of the proving grounds. We don't need to look at it." (*Id*. at 15). Another resident stated, "We have a beautiful country setting back there. We don't need a cell tower" and expressed that he was unhappy with other industrial structures already in the area: "[i]t's bad enough we have the oil pump there and the towers and the tanks there, but that was before I moved in. I can say something about this . . . We just don't want it here." (*Id*. at 59-60). At the December 10, 2018 public meeting a resident stated "I oppose having this tower built. It's going to be right at the end of my street. I'll be waking up to it and seeing it every morning when I drive to work, as I go past the Proving Grounds." (12/10/18 Mtg. Tr. at 44).

Several residents expressed opposition to the proposed towers based on concerns about potential health effects of the cell towers. For example, one resident stated: "You know, granted there's no official literature or publications speaking to the health concerns, but, you know, I have [very young children] And, you know, I'm not a health researcher that has anything to do with studying the effects of, you know, electromagnetic radiation and the effects of cell towers,

but yeah, that's definitely something that's, you know, rattling around in my head . . ."
(11/23/18 Mtg. Tr. at 14-15).

Several residents expressed opposition to the proposed towers because they believe that the cell towers could lower the property values of their residential homes. For example, at the November 13th meeting, one resident stated that the prosed towers would "affect[ ] the value of our property and the enhancement of the surrounding environment," and "I think that it's – you know, it's affecting the property values, it is interfering with the use and enjoyment of my property." (11/13/18 Mtg. Tr. at 11). A resident at the December 10th meeting stated she opposed the tower that would be located near her home because "it's just not going to be good for our whole community, our resale, our land, everything, health." (12/10/18 Mtg. Tr. at 48).

One Township resident submitted a written memorandum to the Planning Commission that referenced "a letter from Remax," presented to the Township of Milford back in 2016, that stated there would be negative impact on property values of the proposed tower that was being proposed in Milford. (ECF No. 24-19 at PageID.1428). Along with that memorandum, that resident submitted a copy of meeting minutes from a Milford Township meeting in 2016. It is undisputed that the actual "letter from Remax" referenced in the memorandum and Milford Township meeting minutes, however, *was not* provided to the Planning Commission. (*See* 2/27/20 Hrg. Tr.).

The Township asserts that "another resident *submitted academic studies* showing that buyers are less likely to purchase homes that located near cell towers." (Def.'s Stmt. A at 21) (emphasis added). To support that assertion, however, the Township directs the Court to "ECF #24-12; PageID 1243 lines 12-25, 1244 line 19-1245 line 3." (*Id*.). Those pages, however, are

not copies of any academic studies that were submitted to the Planning Commission.  Rather, those two pages are a transcript of December 10, 2018 meeting minutes wherein a Township resident sought to discount a 2016 presentation on home values that had been presented to the Township by Verizon.  In doing so, that resident claimed " I have found significant supporting evidence to highlight the potential for property depreciation.  A survey conducted in June 2014 by the National Institute for Science and Law in Public Policy found that 94 percent of people who are surveyed reported that cell towers and antennas in neighborhoods or on a building would impact interest in a property and they price they would be willing to pay for it." (*Id*.).  It is undisputed, however, that this resident did not submit that purported survey, or any other surveys, to the Planning Commission.  (*See* 2/27/20 Hrg. Tr.).

It is undisputed that individuals opposing the proposed towers did not present any witnesses at any of the public meetings that had any specialized knowledge that the towers could impact property values, such as appraisers or realtors.  (Stmts. A at ¶ 21).

It is also undisputed that the Brighton Township Tax Assessor does not make any adjustment reducing values for a parcel of real property based on its proximity to a cell tower. (Stmts. A at ¶ 22).

**Evidence Regarding Whether GM Would Allow Alternative Locations**

During the November 13, 2018 public meeting, members of the Planning Commission asked Verizon's representatives whether the Proposed Sites could be moved further into the Proving Grounds to minimize the impact on neighboring properties and Verizon responded that GM had not said "no," but preferred these locations.  (Def.'s Ex. H at 17 & 26).

At that same meeting Verizon's consultant Robert Przybylo stated, in response to that

same issue, "I don't know that answer for sure, but to make an educated guess [GM] would probably prefer us not be any farther in." (*Id.* at 37-38).  During this case, Przybylo testified as following regarding his comments at that meeting:

> Q.     Turn to page 38 on lines one through three. You finish your comments. You say, but to make an educated guess they would probably prefer us not to be any further in.
>         Does that make you think that you hadn't heard a definitive no from GM at that point in time given that you're saying that, you're making an educated guess and saying probably?
> A.     I don't know how you would define a definitive no.  I knew from the beginning in conversation with GM that going inside the test track was not going to be an option.  So it was never fully vetted for lack of a better term.
> Q.     And that's why you're saying, you're giving kind of an educated guess on November 13?
> A.     Correct.

(Przybylo Dep. at 34).

During the November 13th public meeting, the Planning Commission requested a specific response from GM on whether the towers could be moved further within the Proving Grounds and Verizon's representative agreed to make such an inquiry to GM.  (Stmts. B at ¶ 18).

During discovery in this case, the Township obtained a November 15, 2018 email to a GM representative wherein Przybylo gave an update on the status of the applications and asked GM to provide a letter about the location of the proposed towers.  (*See* Def.'s Sealed Ex. O) (emphasis added).  That email was not part of the record provided to the Planning Commission before it denied on Verizon's applications.

GM provided a letter in response to Verizon's request, which was submitted to the Planning Commission in advance of the December 10, 2018 public meeting.  (Def.'s. Ex. M).  In that letter, GM stated "[b]ased upon our review and due diligence looking at the various

alternative locations, we determined the proposed locations of the cell towers best serve our operational needs and should not be moved further into the property." (Stmts. B at ¶ 20).

The Planning Commission asked Verizon to restart or extend the 90-day review period required under the statute to allow Verizon to present additional information regarding potential alternate sites within the Proving Grounds. Verizon declined and asked the Planning Commission to vote on the applications at the December 10 meeting. (Stmts. B at ¶ 21).

**The Township's Denials Of Verizon's Applications**

The Planning Commission ultimately voted to deny the two applications during the December 10, 2018 meeting. The vote was 4-2 as to both applications. Because that meeting included back-and-forth discussion, from residents, Verizon representatives, the Planning Commission members, and others, there is a *lengthy transcript* of the meeting. Given the way the votes unfolded, with four members voting to deny the two applications, and two voting in favor, that transcript does not include an express statement of the reasons why the applications were denied.

The reasons why Verizon's two applications were denied by the Planning Commission are expressly stated, however, in the meeting minutes that were ultimately approved.

The minutes of the December 19th public meeting were approved and became publicly available following the Planning Commission's vote to adopt them at its January 13, 2019 meeting. (Stmts. B at ¶ 31). Those minutes state, as to each of Verizon's applications, that they were denied "because the proposed use, with its highly visible mechanical equipment, is incompatible with the residential character of the adjacent property, and consequently will likely have an adverse impact on the value of adjacent property for residential purposes; the special

13

land use permit is also denied because the use proximity to residential zoned districts, precludes adequate buffering or the effective use of landscaping to mitigate the adverse impacts." (ECF No. 21-10).

## ANALYSIS

In 1996, Congress enacted the Telecommunications Act, which has been characterized as a "deliberate compromise between two competing aims – to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers." *New Par v. City of Saginaw*, 301 F.3d 390, 394 (6th Cir. 2002). "Because these towers are often not welcome" in a community, the Act articulates Congress' belief that such towers nonetheless "need to be erected to support an efficient nationwide communication system." *Omnipoint Holdings, Inc. v. City of Southfield*, 355 F.3d 601, 603 (6th Cir. 2004). Thus, the Telecommunications Act "generally preserves 'the traditional authority of state and local governments to regulate the location, construction, and modification' of wireless communication facilities like cell phone towers, but imposes 'specific limitations' on that authority." *T-Mobile South, LLC v. City of Roswell, Ga.*, 574 U.S. 293, 135 S.Ct. 808, 814 (2015) (citations omitted).

"One of those limitations is that any decision to deny a request to build a tower 'shall be in writing and supported by substantial evidence contained in a written record.'" *Id*. (citing 47 U.S.C. § 332(c)(7)(B)). "Another is that parties adversely affected by a locality's decision," here Verizon, "may seek judicial review.*" T-Mobile South, LLC*, 135 S.Ct. at 814 (citing 47 U.S.C. § 332(c)(7)(B)(v)).

I.      **Were The Township's Denials Of Verizon's Applications Supported By Substantial Evidence Contained In A Written Record?**

In Count I of its Complaints, Verizon alleges that the Township violated the Telecommunications Act because the Township's denials of its applications were not supported by substantial evidence in a written record. Its relief requested, as to that count, is an injunction requiring the Township to grant the approvals for the two cell towers and issue the required permits. (*See* Compl. at 8).

### A. The Township Denied Verizon's Applications For Two Reasons: 1) Aesthetic Concerns About The Towers; And 2) The Towers' Negative Affect On Property Values.

Of course, "[i]n order to determine whether a locality's denial was supported by substantial evidence," the Court "must be able to identify the reason or reasons why the locality denied the application." *T-Mobile South, LLC, supra*. Thus, the Act requires localities such as the Township to provide reasons, in writing, when they deny applications to build cell phone towers. *Id*. The "locality must provide or make available its written reasons at essentially the same time as it communicates its denial." *Id.* at 816.

But those stated reasons for the denial do not have to be provided in a formal written denial notice or letter. Instead, the Act permits localities to comply "with their obligation to give written reasons" in different ways, "so long as the locality's reasons are stated clearly enough to enable judicial review*." Id.* at 816. A "locality may satisfy its statutory obligations if it states its reasons with sufficient clarity in some other written record issued essentially contemporaneous with the denial," such as detailed minutes of a city council meeting. *Id*. at 818.

In *T-Mobile South, LLC,* the Supreme Court further explained that a locality may opt to issue an express statement of its reasons:

> Although the statute does not require a locality to provide its written reasons in any particular format, and although a locality may rely on detailed meeting

minutes as it did here, we agree with the Solicitor General that "the local government may be better served by including a *separate statement containing its reasons*." Brief for United States as *Amicus Curiae* 26; *see also Id.* at 34. If the locality writes a short statement providing its reasons, the locality can likely avoid prolonging the litigation – and adding expense to the taxpayers, the companies, and the legal system – while the parties argue exactly what the sometimes voluminous record means. Moreover, in that circumstance, the locality need not worry that, upon review of the record, a court will either find that it could not ascertain the locality's reasons or mistakenly ascribe to the locality a rationale that was not in fact the reason for the locality's denial.

*Id.* at 816 (emphasis added).

As such, the Court concludes that the statement of reasons expressly set forth in the minutes of the December 19th public meeting, that were approved by the Township's Planning Commission, are the reasons for the denials.

Moreover, the parties' briefs support the Court need only consider those reasons.[1] Because the transcript of the December 10, 2018 meeting lengthy, in its motion, Verizon listed and then challenged all of the potential reasons, discussed or alluded to during the meeting, as to why the two applications may have been denied by the Planning Commission. Following the parties' briefs, however, the Court need only consider two reasons for the denial of the applications: 1) the aesthetic impacts of the proposed towers; and 2) the effects the proposed towers would have on property values. That is because those are the only reasons for the denial that the Township contends are supported by substantial evidence. (*See* Def.'s Br., ECF No. 30, at 15-16, "Verizon's last argument regarding the existence of 'substantial evidence' supporting the Commission's decision finally reaches the crux of the issue in this case: whether the

---

[1]The Court notes that some residents expressed opposition to the proposed towers based on concerns over health effects. The Township *did not* deny the applications based upon concerns about health effects. And even if it had, the Act explicitly prohibits denials on those grounds. *New Par*, 301 F.3d at 398.

evidence presented to the Commission was sufficient to justify the bases for its denials" and asserting that "[t]he Commission's denial was supported by substantial evidence regarding the aesthetic impacts of the proposed cell towers and their effects on property values." (Def.'s Br., ECF No. 30, at 15); (*see also* Def.'s Br., ECF No. 24, at 14, "The Commission's stated reasons for denying Verizon's applications both ultimately relate to the aesthetics of the proposed towers and their effects on the neighboring residential properties.").

### B. Neither Of Those Reasons Are Supported By Substantial Evidence Contained In The Written Record Before The Township.

Again, this Court must determine if the Township's reasons for denying Verizon's applications for these two towers are supported by "substantial evidence" contained in the "written record." 47 U.S.C. § 332(c)(7)(B)(iii).

That "subsection applies to decisions made solely on the basis of the factual record before the [locality] and are the subject of deferential substantial evidence review." *Sprint Spectrum, L.P. v. Zoning Bd. of Adjustment*, 606 F. A'ppx 669, 672 (3rd Cir. 2015). Thus, as to Count I of Verizon's Complaints, this Court only considers the evidence contained in the record that the Township's Planning Commission itself considered. *Id.*; *see also Second Generation Props., L.P. v. Town of Pelham*, 313 F.3d 620, 629 (1st Cir. 2002).

"The statutory phrase 'substantial evidence' is a 'term of art' in administrative law that describes how 'an administrative record is to be judged by a reviewing court.'" *T-Mobile South, LLC*, 135 S.Ct. at 815. The Sixth Circuit has explained this substantial evidence standard as follows:

> Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Cellular Tel. Co.,* 166 F.3d at 494 (*quoting Universal Camera v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed.

456 (1951)). This Court reviews the entire record, including evidence opposed to the result of the decision. *See American Textile Mfrs. Institute, Inc. v. Donovan,* 452 U.S. 490, 523, 101 S.Ct. 2478, 69 L.Ed.2d 185 (1981). We look to whether the [locality] explained any credibility judgments it made and whether it gave reasons for crediting one piece of evidence over another. *See Peabody Coal Co. v. Hill,* 123 F.3d 412, 415 (6th Cir. 1997). This Court must examine the evidence as a whole, taking into account whatever in the record fairly detracts from its weight. *See Wyatt v. Secretary of Health and Human Servs.,* 974 F.2d 680, 683 (6th Cir.1992).

*Telespectrum, Inc. v. Public Serv. Comm'n of Kentucky*, 227 F.3d 414, 423 (6th Cir. 2000).

"The 'substantial evidence' standard constructs a floor below which the justifications for denying a permit cannot fall – if it does," the Township's decisions on Verizon's application violate § 332(c)(7)(B)(iii). *T-Mobile Central, LLC v. Charter Twp. of West Bloomfield*, 691 F.3d 794, 799 (6th Cir. 2012).

"In order to comply with the Act," the Township's decisions to deny Verizon's applications must be supported by substantial evidence contained in the written record. *New Par*, 301 F.3d at 398. That is what this Court must determine now – whether the Township's two reasons for denying the applications (aesthetics and impact on property values) are supported by substantial evidence in the written record.[2]

The Township contends that "[c]ourts in this circuit have found that more widespread opposition to a cell tower's aesthetics is sufficient for a finding of substantial evidence" and directs the Court to *Sprint Spectrum, L.P. v. Charter Twp. of Brandon*, 563 F.Supp.2d 697 (E.D. Michigan 2008) (Def.'s Br. at 14).[3] It contends that here, in contrast to Sixth Circuit decisions

---

[2]As such, the Township's view of "what additional evidence" it would have wanted in order to grant Verizon's two applications "is irrelevant." *New Par*, 301 F.3d at 398.

[3]The Township also asserts that "other circuits" have found that aesthetic concerns expressed by residents may constitute substantial evidence in support of a denial. (*See* ECF No.

wherein substantial evidence did not exist based upon a few residents complaining about aesthetics, there was "widespread opposition" to the proposed towers. (*Id*. at 16-17).

The Township's reliance on Judge Rosen's decision in *Sprint Spectrum, L.P.* is misplaced. Judge Rosen did state that the resident concerns about aesthetics in that case could not "readily be dismissed as generalized objections" as "far more than a handful of nearby property owners voiced their opposition to Sprint's proposal, thereby distinguishing this case from others in which the courts found evidence of only minimal citizen opposition." *Sprint Spectrum, L.P.*, 563 F.Supp.2d at 708. In that case, in addition to multiple residents having spoke out in opposition to the proposed tower at public meetings, an "attorney appeared at these hearings on behalf of still more residents who opposed Sprint's plan, and that dozens more signed petitions in opposition to Sprint's proposed tower." *Id*. Even so, the district court still concluded that those objections of the neighboring property owners *did not* constitute substantial evidence in support of the township's denial of the sole proposed tower at issue. Judge Rosen granted summary judgment in favor of Sprint, and granted its requested relief of an injunction requiring the township to grant Sprint's application.

Here, there was considerably less opposition than there was in *Sprint Spectrum, L.P.*, where the district court concluded there was not substantial evidence to support the denial. There was, in fact, minimal citizen opposition to these proposed cell towers. In a township with a population of more than 17,000 persons, less than twenty-five individuals opposed the *two* different towers that Verizon seeks to build based on aesthetics concerns.

---

30 at PageID.1596). As Verizon notes, however, those cases are not binding and this Court must follow Sixth Circuit authority.

The minimal opposition that occurred here is more comparable to that in *T-Mobile Cent., LLC v. Charter Twp. of West Bloomfield*, 691 F.3d 794 (6th Cir. 2012). In that case, the Sixth Circuit affirmed the district court's ruling that the denial of the application based on aesthetic concerns was not submitted by substantial evidence. That case involved "generalized complaints" by nearby residents that "effectively amount to NIMBY – not in my backyard." *Id.* at 800. As to those NIMBY concerns, the Sixth Circuit noted:

> Several of the concerned citizens and members of the Board specifically mentioned their backyards during the August 3, 2009 meeting. ("But I need to know if a resident says, you put an ugly tower in my *backyard* and you potentially decrease my property value; [m]y *backyard* is kind of where they're going to put this thing; [b]ut the final word is, would you want one of these cell towers in what would be, if I build a house there or build houses there, in my *backyard*?' [w]ould you want that in your *backyard*; [t]here will be towers and towers, and pretty soon I'll have Disneyland in my backyard") (emphasis added).

*Id.* at 800 n.4. The Sixth Circuit explained that if such "generalized objections sufficed, any wireless facility could be rejected. Anyone who opposed a cell tower in their backyard could offer an excuse that it would be bad for the community, would not be aesthetically pleasing, or would be otherwise objectionable. But that by itself is not enough. There must be evidence. And not just any evidence – evidence that is *substantial*." *Id.* at 801 (emphasis in original).

Here, like the situation presented in *T-Mobile Cent., LLC*, the opposition to the proposed towers that was voiced by a few residents who live near one of the two proposed sites consisted of generalized complaints that "effectively amount to NIMBY – not in my backyard." (*See e.g.*, 11/13/18 Mtg. Tr. at 15, "nobody wants a cell phone tower in their front yard;" 11/13/18 Mtg. Tr. at 10, expressing the tower should be moved such that "we won't see it;" 12/10/18 Mtg. Tr. at 44, "I oppose having this tower built. It's going to be right at the end of my street. I'll be waking up to it and seeing it every morning when I drive to work, as I go past the Proving

Grounds.").

The Township's denials based upon aesthetic concerns were not based on substantial evidence in the record that was before the Planning Commission. *T-Mobile Cent., LLC, supra*; *Sprint Spectrum, L.P., supra*; *see also New Par v. City of Saginaw*, 301 F.3d 390, 399 (6th Cir. 2002) (affirming district court's ruling that denial was not supported by substantial evidence and noting that a few generalized expressions of concern with aesthetics cannot serve as substantial evidence on which the locality based the denial.); *Laurence Wolf Cap. Mgmt. Trust v. City of Ferndale*, 61 F. App'x 204, 218-19 (6th Cir. 2003) (denial not supported by substantial evidence where generalized concerns about aesthetics were expressed by two citizens and the board members); *Eco-Site, Inc. v. City of Huber Heights, Ohio*, 2018 WL 3092901 at *6 (S.D. Ohio 2018) (same); *Cellular South Real Estate v. City of Germantown*, 2015 WL 38552781 at * 7 (W.D. Tenn. 2015) (same).

When it comes to the Township's second stated reason, that the towers would lead to a decrease in property values, that reason has no evidentiary support in the record that was presented to the Planning Commission.

In *New Par*, one of the reasons why the locality denied the application for a proposed cell tower was that the proposed tower would negatively affect adjacent property values. In affirming the district court's ruling that the denial was not supported by substantial evidence, the Sixth Circuit noted that "[a]lthough it is possible" that the proposed tower "would negatively affect adjacent property values," no *evidence* in support of that was presented to the Township. *New Par*, 301 F.3d at 399. The same is true here.

No written reports from any experts were presented to the Township to show that the

proposed towers would lower property values. And it is undisputed that individuals opposing the proposed towers did not present any witnesses at any of the public meetings that had any specialized knowledge that the towers could impact property values – such as appraisers or realtors. It is also undisputed that Brighton Township Tax Assessor does not make any adjustment reducing values for a parcel of real property based on its proximity to a cell tower. (Stmts. A at ¶ 22).

As to the substantial evidence in the record before the Planning Commission that supports this stated reason, the Township directs the Court to: 1) materials sent to the Planning Commission by a resident who referenced a "letter from Remax" that had been submitted to a different Township; and 2) two pages of the December 10, 2018 meeting. (*See* Def.'s Br., ECF No. 24, at PageID.959).

As to the first item, a Township resident submitted a written memorandum to the Planning Commission that referenced "a letter from Remax," that had been presented to the Township of Milford back in 2016, that stated there would be negative impact on property values of the proposed tower that was being proposed in Milford. (ECF No. 24-19 at PageID.1428). Along with that memorandum, that resident submitted a copy of meeting minutes from a Milford Township meeting in 2016. The actual "letter from Remax" referenced in the memorandum and Milford Township meeting minutes, however, *was not* provided to the Township's Planning Commission.[4]

---

[4]Moreover, even if it had been, that letter presumably addressed property values in *Milford Township*, and the likely impact on them if the proposed tower in Milford Township had been constructed in the *residential* zone at issue, not property values in *Brighton Township* and the impact that construction of the proposed towers in the *industrial* zones at issue here could have upon them.

As to the second item, the Township asserts that "another resident *submitted academic studies* showing that buyers are less likely to purchase homes that located near cell towers." (Def.'s Stmt. A at ¶ 21) (emphasis added). To support that assertion, however, the Township directs the Court to "ECF #24-12; PageID 1243 lines 12-25, 1244 line 19-1245 line 3." (*Id*.). Those pages, however, are not copies of any academic studies that were submitted to the Planning Commission. Rather, those two pages are portions of the transcript of December 10, 2018 meeting wherein a Township resident seeks to discount a 2016 presentation on home values that had been presented to the Township by Verizon. In doing so, that resident claimed " I have found significant supporting evidence to highlight the potential for property depreciation" and purported to reference a 2014 survey she had seen. It is undisputed, however, that this resident *did not* submit any actual surveys to the Planning Commission.

Accordingly, the Township's second stated reason, that the towers would lead to a decrease in property values, is not supported by substantial evidence. *New Par,* 301 F.3d at 399; *Eco-Site, Inc., supra*, at * 6 ("Unsubstantiated assertions about property values are not substantial evidence."); *Cellular South Real Estate, Inc., supra*, at *7 (same).

Because neither of the Township's reasons for denying Verizon's two applications were supported by substantial evidence in the record before the Township's Planning Commission, the Township violated the Act, as alleged in Count I of Verizon's Complaints, when it denied Verizon's applications for the two towers.

**C.    The Appropriate Remedy For This Violation Is An Injunction Ordering The Township To Issue The Two Permits.**

Given that this Court concludes that the Township violated the Act's requirement that its reasons for denying Verizon's applications for these two towers be supported by "substantial

evidence" contained in the "written record," this Court must determine what is the appropriate relief for that violation.

The relief that Verizon requests, as to each Count of its Complaints, is for the Court to issue an injunction requiring the Township to grant the two applications and issue the necessary permits. That is the relief that Verizon's summary judgment motion seeks as well, and that is what it is entitled to under Sixth Circuit authority.

The Telecommunications Act itself "does not specify a particular remedy for violations of its provisions." *Tenn. ex rel. Wireless Income Props., LLC v. City of Chattanooga*, 403 F.3d 392, 395 (6th Cir. 2005). The Sixth Circuit, however, has "recognized that an injunction requiring the issuance of a permit ordinarily is a proper remedy when a governmental body has denied a permit without substantial evidence supporting the denial." *Id.* at 399; *see also New Par v. City of Saginaw*, 301 F.3d 390, 399 (6th Cir. 2002) (injunction is appropriate remedy for locality's failure to comply with the Act's substantial evidence requirement).

Accordingly, as to Count I of Verizon's Complaints, the Court concludes that Verizon is entitled to summary judgment in its favor and an injunction ordering the Township to grant its two applications and issue the necessary permits.


**II.     Because Verizon Prevails As To Count I And Obtains All The Relief It Seeks In This Action, The Court Need Not Address Its Alternative Counts.**

In Counts II and III of its Complaints, Verizon asserts additional violations of the Act that may entitle it to the same injunctive relief it seeks as to Count I. In Count IV of its Complaints, Verizon alleges that the Township violated Section 503(3) of the Michigan Zoning Enabling Act.

Because this Court has determined that the Township violated the Telecommunications Act as to Count I of its Complaints and is issuing the requested injunction, which is the only relief that Verizon seeks in this action, the issues of whether the Township violated the Act in additional ways, or complied with Michigan's Zoning Enabling Act, are moot. *See, e.g., T-Mobile, LLC v. Charter Twp. of West Bloomfield*, 691 F.3d 794, 798 & 809 (6th Cir. 2012).

## CONCLUSION & ORDER

For the reasons set forth above, the Court GRANTS summary judgment in favor of Plaintiff  Verizon as to Count I of its Complaints, because the Township's reasons for denying the applications were not supported by substantial evidence in the written record before the township.  As such, the Court shall issue the requested injunction and order the Township to grant the two applications and issue the necessary permits.  The Court concludes that all other issues raised in the cross-motions are Moot.

Given the Court's ruling, the Court hereby directs the parties to confer upon the appropriate language to be included in the injunction to be issued by the Court.  Within ten (10) days of this Opinion & Order, the parties shall either: 1) submit a joint proposed injunction; or 2) advise the Court that they cannot agree upon the language of the injunction to be issued by the Court, in which case the Court shall issue an additional order regarding same.


IT IS SO ORDERED.

                                        s/Sean F. Cox
                                        Sean F. Cox
                                        United States District Judge


Dated:  April 6, 2020